Judge McMahon

493-07/LJK/JPG
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
SEA SPEED CARGO & SEA TRANSPORT LLC
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

07 CIV 8716

Lawrence J. Kahn (LK 5215)
Jan P. Gisholt (JG 3768)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SEA SPEED CARGO & SEA TRANSPORT LLC.,

               Plaintiff,

   - against –

TANGANYIKA INVESTMENT OIL & TRANSPORT
CO. LTD.,

               Defendant.
-----------------------------------------------------------------x

07-Civ-

**VERIFIED COMPLAINT**

    Plaintiff SEA SPEED CARGO & SEA TRANSPORT LLC. (hereinafter "SEA SPEED"), by its attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant TANGANYIKA INVESTMENT OIL & TRANSPORT CO. LTD. (hereinafter "TIOT") alleges upon information and belief as follows:

    1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action

NYDOCS1/291209.2

arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2. At all times relevant hereto, SEA SPEED was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 205 Al Hawai Building, Al Rigga Road, Deira Dubai, United Arab Emirates.

3. At all times relevant hereto, Defendant TIOT was and still is a foreign business entity existing under the laws of a foreign country with an office and place of business in Dar Es Salaam, Tanzania, and with a postal address of P.O. Box 5999, Dar Es Salaam, Tanzania.

4. SEA SPEED, as disponent owner,[1] entered into two maritime contracts of charter party with TIOT, as charterer, dated October 2, 2003 and April 15, 2004, respectively, for the charter of the M.T. TAGANROGA to carry quantities of gas oil or other petroleum products from Jebel Ali, United Arab Emirates to Tanga, Tanzania. Copies of the two charters, both of which are on the ASBATANKVOY form, are attached hereto as Exhibits A and B, respectively.

5. Both charters required TIOT to pay freight and demurrage in full and on time, and both charters provide for disputes to be resolved by arbitration at London, England, with English law to apply.

6. SEA SPEED satisfied all of its obligations under the charter with TIOT.

7. Demurrage was payable under the first charter party at a rate of $6,000 per day pro rata. The vessel was on demurrage 2.586806 days while operating for TIOT under the first charter and TIOT was therefore liable for $6,000/day x 2.586806 days = $15,520.84.

8. TIOT, however, in breach of its obligations under the first charter party, did not pay this or any other amount for demurrage with respect to the first charter.

---

[1] SEA SPEED was not the actual owner of the vessel, but instead chartered it from another entity.

9. Demurrage was payable under the second charter party at a rate of $5,000 per day pro rata. The vessel was on demurrage 9.743056 days while operating for TIOT under the second charter and TIOT was therefore liable for $5,000/day x 9.743056 days = $48,715.28.

10. TIOT, however, in breach of its obligations under the second charter party, did not pay this or any other amount for demurrage with respect to the second charter.

11. In all, TIOT is in arrears for unpaid demurrage under the two charters for the sum of $64,236.12, no part of which has been paid, though duly demanded.

12. The charters both specifically provide for the resolution of disputes by arbitration at London, England, with English law to apply. SEA SPEED specifically reserves its right to arbitrate the merits of its dispute with TIOT pursuant to the terms of the charters.

13. This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for SEA SPEED's claims made or to be made in arbitration in London, England under English law, as agreed by the parties.

14. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements and the cost of the arbitration, all of which constitutes a part of the Plaintiff's claim and the amount sued for herein.

15. SEA SPEED estimates that it will incur approximately $50,000 in awardable attorneys fees, disbursements, and costs of the arbitration.

16. Interest is also typically awarded under English law and arbitration, regularly at the rate of LIBOR plus 1-2% compounded quarterly (approximately 8%). SEA SPEED estimates that it will be awarded approximately $5,138.89 in interest per annum. Given the straightforward nature of this dispute, SEA SPEED estimates that the arbitration in this action might be resolved in approximately one year. Accordingly, SEA SPEED estimates that it will be

awarded approximately $5,138.89 in interest, which also constitutes a part of the Plaintiff's claim and the amount sued for herein.

17. In all, the claim for which SEA SPEED sues in this action, as near as presently may be estimated, totals **$119,375.01**, no part of which has been paid by TIOT. SEA SPEED specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure SEA SPEED.

18. Upon information and belief, and after investigation, Defendant TIOT cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due to, from, or for the benefit of Defendant TIOT (hereinafter, "ASSETS"), including but not limited to "ASSETS" at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

**WHEREFORE**, Plaintiff SEA SPEED prays:

a. That process in due form of law according to the practice of this Court issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it in the principal amount of $64,236.12 plus interest, costs and attorneys fees;

b. That since Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to

and including the sum of **$119,375.01**, be restrained and attached, including but not limited to any cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or any other property of, belonging to, due to, from, or for the benefit of Defendant (collectively "ASSETS"), including but not limited to such "ASSETS" as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c.  That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and,

d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
October 9, 2007

>
> FREEHILL HOGAN & MAHAR, LLP
> Attorneys for Plaintiff
> SEA SPEED CARGO & SEA TRANSPORT LLC
>
> By: _____
> Lawrence J. Kahn (LK 5215)
> Jan P. Gisholt (JG 3768)
> 80 Pine Street
> New York, NY 10005
> (212) 425-1900
> (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

LAWRENCE J. KAHN, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                            Lawrence J. Kahn

Sworn to before me this
9th day of October, 2007

_____
Notary Public

GLORIA J. REGIS HOSEIN
Notary Public, State of New York
No. 01RE6065625, Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 22, 2009


Association of Ship Brokers
& Agents (U.S.A.), Inc.
October 1977


FIRST ORIGINAL

CODE WORD FOR THIS
CHARTER PARTY:
ASBATANKVOY

# TANKER VOYAGE CHARTER PARTY
## PREAMBLE

                Dubai       October 02rd 2003
                Place              Date

IT IS THIS DAY AGREED between   **Sea Speed Cargo & Sea Transport LLC Dubai as disponent Owners**

chartered owner/owner (hereinafter called the "Owner") of the _____

SS/MS   **M.T. TAGANROGA**   (hereinafter called the "Vessel")

and   **TANGANYIKA INVESTMENT OIL & TRANSPORT CO. LTD**   (hereinafter called the Charterer")

that the transportation herein provided for will be performed subject to the terms and conditions of this Charter Party, which includes this Preamble and Part I and Part II. In the event of a conflict, the provisions of Part I will prevail over those contained in Part II.

## PART I

A.  Description and Position of Vessel :   *(also as described in Q88)*

    Deadweight: 6,297   tons (2240 lbs.)        Classed: Russian Register

    Loaded draft of Vessel on assigned summer freeboard 7.20 MTRS   in salt water.

    Capacity for cargo: abt 6165 CUB MTR at 98 % more or less.

    Coated:   ☒ Yes  ☐ No

    Coiled:   ☒ Yes  ☐ No        Last two cargoes : Gas Oil / Lubes

    Now:    Trading                Expected Ready: 07. 10 . 2003

B.  Laydays:   Commencing : **07 .10. 2003**       Canceling: **09.10. 2003**

C.  Loading Port(s): OSB Jebel Ali UAE              ~~Charterer"s Option~~

D.  Discharging Port(s): OSA or B Tanga , Tanzania        ~~Charterer"s Option~~

E.  Cargo / Quantity : MIN **4.200** MTS +5% , ONE GRADE , Gas Oil

F..  Freight Rate / : USD **33. 00** pmt basis 1/ 0 **[ free of port & marine dues at Discharge port ]**

G.  Freight Payable to: Owners Nominated Account in Freight Invoice with in 3 banking days after loading & always **Before Breaking Bulk**

H.  Total Laytime in Running Hours: **Total 72 hrs** F(S)HINC - REVERSIBILE

I.  Demurrage per day:. **USD 6000/-** PER DAY PRO RATA .. Undisputed Demurrage , if any, to be settled every 10 days on receipt of owners telex / fax / email invoice other wise within 10 days after completion of discharge & submission of Owners Invoice accompanied with SOF / NOR & laytime calculations

J.  Commission of 5% on is payable by Owner to Sea Speed, for division and deductible at source, on the actual amount freight, dead freight, demurrage

K.  The place of General Average and arbitration proceedings to be London AND ENGLISH LAW APPLICABLE.

1

Ex A

L.  ~~Tovalop: Owner warrants vessel to be a member of TOVALOP scheme and will be so maintained throughout duration of this Charter.~~

M.  **Special Provisions:**

*FIRST ORIGINAL*

*1-Owners agents at load port , Sea Speed, Dubai and Charteres agents at discharge port*

*2-Charterers to pay all port & marine dues at discharge port . Any vessel expenses to be settled by owners*

*3-Any taxes a/o dues on freight a/o cargo to be for Charterers account*

*4-Any taxes a/o dues a/o royalties calculated a/o levied on cargo a/o freight to be for charterers account*

*5-Any dockage / wharfage / put / merchant marine /customs fees related to cargo / cargo handling fees or any other fee or charge related to cargo to be for charterers account.*

*6-In absence of original B/L at discharge port, Owners to discharge against Charters LOI, in Owners P&I Club wording, without bank guarantee.*

*7-Fixture to be stircily P&C*

IN WITNESS WHEREOF, the parties have caused this Charter, consisting of a Preamble, Parts I and II, to be executed in duplicate as of the day and year first above written.

Witness the signature of:          FOR

By:                                             Dis porai  OWNERS

Witness the Signature of:          FOR   Tanganyika Investment Oil
                                                        and Transport Co. Ltd.
                                                        Box 5999 DSM-Tanzania.
By:                                             CHARTERERS Tel: 00255741360003
                                                        ARSHID MANJI
                                                        050. 345 9347

2

Association of Ship Brokers & Agents (U.S.A.) Inc. October 1977

ORIGINAL

CODE WORD FOR THIS CHARTER PARTY: ASBATANKVOY

# TANKER VOYAGE CHARTER PARTY
## PREAMBLE

                          Dubai       April 15th 2004
                          Place            Date

IT IS THIS DAY AGREED between __Sea Speed Cargo & Sea Transport LLC Dubai as disponent Owners__

chartered owner/owner (hereinafter called the "Owner") of the _____

SS/MS      M.T. TAGANROGA                           (hereinafter called the "Vessel")

and    TANGANYIKA INVESTMENT OIL & TRANSPORT CO. LTD        (hereinafter called the Charterer")

that the transportation herein provided for will be performed subject to the terms and conditions of this Charter Party, which includes this

Preamble and Part I and Part II. In the event of a conflict, the provisions of Part I will prevail over those contained in Part II.

## PART I

A.    Description and Position of Vessel :     *(also as described in Q88)*

     . Deadweight: 6,297       tons (2240 lbs.)           Classed: Russian Register

     Loaded draft of Vessel on assigned summer freeboard 7.20 MTRS      in salt water.

     Capacity for cargo: abt 6165 CUB MTR at 98 % more or less.

     Coated:          ☑ Yes    ☐ No

     Coiled:           ☑ Yes    ☐ No         Last two cargoes : Gas Oil / Lubes

     Now:            Trading                         Expected Ready: 07. 10 . 2003

B.    Laydays:     Commencing : 19 .04. 2004              Canceling: 20 04. 2004

C.    Loading Port(s): OSB Jebel Ali UAE                                ~~Charterer"s Option~~

D.    Discharging Port(s): APS or B Tanga , Tanzania                     ~~Charterer"s Option~~

E.    Cargo / Quantity : MIN 5,200 MTS, 2/3 grades WVNS, CPP, Cahrterers Option up to full cargo. [intentions Gas Oil & Mogas]

F.    Freight Rate / : USD 31.50 pmt basis 0 / 0 [ free of port & marine dues at Load & Discharge ports ]

G.    Freight Payable to: Owners Nominated Account in Freight Invoice with in 5 banking days after loading , in any case freight to be in owners account Before Breaking Bulk. Anytime waiting for freight to count as laytime

H.    Total Laytime in Running Hours: Total 100 hrs F(S)HINC - REVERSIBILE

I.    Demurrage per day:. USD 5000/- PER DAY PRO RATA .. Undisputed Demurrage , if any, to be settled every 5 days on receipt of owners telex / fax / email invoice other wise within 10 days after completion of discharge & submission of Owners Invoice accompanied with SOF / NOR & laytime calculations

J.    Commission of 5% on is payable by Owner to Sea Speed, for division and deductible at source, on the actual amount freight, dead freight, demurrage

K.    The place of General Average and arbitration proceedings to be London AND ENGLISH LAW APPLICABLE.



1

Ex B

L. ~~Tovalop: Owner warrants vessel to be a member of TOVALOP scheme and will be so maintained duration of this Charter.~~

## M. Special Provisions:

*1-Owners agents at load port, Sea Speed, Dubai and Charterers agents at discharge port*

*2-Charterers to pay all port & marine dues at load and discharge ports. Any vessel expenses to be settled by owners*

*3-Any taxes a/o dues on freight a/o cargo to be for Charterers account*

*4-Any taxes a/o dues a/o royalties calculated a/o levied on cargo a/o freight to be for charterers account*

*5-Any dockage / wharfage / put / merchant marine /customs fees related to cargo / cargo handling fees or any other fee or charge related to cargo to be for charterers account.*

*6-In absence of original B/L at discharge port, Owners to discharge against Charters LOI, in Owners P&I Club wording, without bank guarantee.*

*7-Fixture to be stirctly P&C*

*8-In case of board/board operations, Charterer to arrange for suitable fenders*

---

IN WITNESS WHEREOF, the parties have caused this Charter, consisting of a Preamble, Parts I and II, to be executed in duplicate as of the day and year first above written.

Witness the signature of:    FOR    _____

By:                                         OWNERS

Witness the Signature of:    FOR    _____

By:                                         CHARTERERS

For. T.I.O.T

Tanganyika Inv. Oil
and Transport Co. Ltd

2